J-S56044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ISMAEL SAMUEL TORRES, | |
| Appellant | No. 15 MDA 2015 |

Appeal from the Judgment of Sentence July 2, 2014
in the Court of Common Pleas of Lebanon County
Criminal Division at No.: CP-38-CR-0001257-2013

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED NOVEMBER 05, 2015**

Appellant, Ismael Samuel Torres, appeals from the judgment of sentence imposed pursuant to his jury conviction of one count each of fleeing or attempting to elude police officer and false reports to law enforcement authorities; three counts of recklessly endangering another person;[1] and related summary offenses.

We take the following facts from our independent review of the record and the trial court's November 13, 2014 opinion.  On September 30, 2013,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3733; and 18 Pa.C.S.A. §§ 4906 and 2705, respectively.

the Commonwealth filed an amended information[2] against Appellant charging him with the above crimes. The amended information alleged that, on August 6, 2013, Appellant was the driver in a high speed chase that endangered five individuals, and lasted an extended period of time on Interstate 78, and other locations, in Lebanon County.

Appellant's one-day jury trial occurred on June 4, 2014, and he exercised his right not to testify on his own behalf. The Commonwealth presented the testimony of Trooper Matthew Hartung, vehicle occupant X.C.,[3] and three road workers. Trooper Hartung testified that, when he pulled out from the median area of Interstate 78 on the date of the incident, he observed Appellant's van abruptly cut across the highway from the left lane, and enter the exit ramp for Route 22. (*See* N.T. Trial, 6/04/14, at 32). In an effort to catch up with the van, the trooper entered Route 22, and continued to increase his speed to between eighty-five and ninety miles-per-hour (mph) until he spotted the vehicle in front of him. (*See id.* at 33). The trooper turned on his lights and siren, which also activated the mobile video recorder (MVR) of his vehicle. (*See id.* at 33, 39).

---

[2] The original information, filed on September 27, 2013, contained an incorrect date for the crime. (*See* Information, 9/27/13, at 1). The amended information only changed this date. (*See* Amended Information, 9/30/13, at 1).

[3] X.C. was sixteen on the date of the incident, and was the passenger of the van Appellant was driving. (*See* N.T. Trial, *infra* at 24-25).

As the trooper followed, the van increased its speed, reaching 100 mph in an active construction zone on Route 22. (*See id.* at 36). Road crew members Edward Curnaw, Christopher Nolan, and Daniel Orwig, testified that, during the pursuit, the van traveled inside the closed lane in which they were working. (*See id.* at 11, 17, 22). They testified about the van travelling approximately ninety mph when hitting, and then dragging, an orange cone. (*Id.* at 12-14, 18, 22). Trooper Hartung stated that, once exiting the closed lane, the van cut off other vehicles, passed them on the berm of the road, and briefly traveled into the oncoming lane of traffic. (*See id.* at 36-37). Several miles later, the van took a sharp turn off Route 22 onto Fort Indiantown Gap Road. (*See id.* at 37). Although the road is meant to be travelled at a low rate of speed, Appellant continued to drive between sixty-five and seventy mph and ignore stop signs. (*See id.* at 37-38).

The pursuit ended when the van was unable to make a turn at the intersection of Route 443 and Route 72. (*See id.* at 38-39). The van left the road and went into an embankment, where it flew, on its side, into a tree. (*See id.* at 39). When emergency vehicles arrived, troopers on the scene broke the van's rear window to allow its two occupants, Appellant and X.C., to walk out. (*See id.* at 47). At the time, Trooper Hartung noted that Appellant had injuries consistent with a seatbelt being worn left to right, *i.e.,*

on the driver's side of the vehicle. (*See id.*). X.C. had no visible injuries consistent with wearing a seatbelt. (*See id.* at 48).

X.C. testified that he did not have a driver's license, or know how to drive. (*See id.* at 26). He stated that Appellant drove on the day in question. (*See id.* at 24). X.C. was asleep, without a seatbelt, in the rear aisle of the van, when a banging noise woke him. (*See id.* at 26). He sat up and realized Appellant was hitting cones in a construction zone. (*See id.*). The Commonwealth produced several exhibits, including the MVR recording (exhibit 1), a still photograph produced from the MVR recording (exhibit 2), and photographs taken immediately after the pursuit of Appellant wearing a white shirt (exhibit 3) and of X.C. in a light brown one (exhibit 4).

Early in the deliberation process, the jury members indicated that they could not reach a unanimous verdict. (*See id.* at 84). The court provided them with a supplemental instruction that, if they thought there was any possibility that they might come to an agreement if given the opportunity, then they should attempt to reach a verdict. (*See id.* at 84-87). Appellant did not object to the court's charge. (*See id.* at 87). The jury convicted Appellant of the aforementioned charges and the court found him guilty of related summary offenses. On July 2, 2014, the court imposed an aggregate sentence of not less than five nor more than fifteen years' incarceration. On November 13, 2014, the court denied Appellant's post-

sentence motions.  Appellant timely appealed on December 15, 2015.[4]  The court did not order Appellant to file a Rule 1925(b) statement; nor did it file a Rule 1925(a) opinion.  *See* Pa.R.A.P. 1925.

Appellant raises five questions for our review:

I.    Did the Commonwealth fail to prove beyond a reasonable doubt that the Appellant was the driver of the car on August 6, 2013?

II.    Did the jury placed [sic] too great a weight on the testimony presented by X.C. that Appellant was the driver of the car?

III.    Did the [t]rial [c]ourt err in allowing the Commonwealth to admit into evidence, over [d]efense [c]ounsel's objection, a still photograph taken from the [t]rooper's [MVR] that showed the fleeing car driving passed [sic] the [t]rooper's vehicle because the photograph was not disclosed until the morning of trial?

IV.    Did the [t]rial [c]ourt commit a manifest abuse of discretion when instructing the [j]ury concerning the consequences if the [j]ury failed to return a unanimous verdict?

V.    Did the [s]entencing [c]ourt committed [sic] a manifest abuse of discretion by running all of the counts upon which Appellant was convicted consecutively, and by running the sentence consecutive to his parole violation[?]

(Appellant's Brief, at 4).

In his first issue, Appellant maintains that "[t]he Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [he] was the driver of the van."  (*Id.* at 10; *see id.* at 11).  We disagree.

---

[4] The thirty-day deadline fell on a Saturday.  *See* 1 Pa.C.S.A. § 1908.

Our standard of review of sufficiency of the evidence challenges is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014) (citation omitted).

Here, van passenger X.C. testified that Appellant was the driver of the vehicle during the incident in question. (***See*** N.T. Trial, at 24). Appellant had chest and shoulder injuries consistent with those caused by wearing a driver's side seatbelt. (***See id.*** at 47). X.C. had no such injuries, which comported with his statement that he had not been wearing a seatbelt because he had been sleeping in the back of the van. (***See id.*** at 26, 48). Finally, Appellant was driving with a suspended license, providing him with motive to flee from the police. (***See id.*** at 49). Based on the foregoing, we

conclude that the trial court properly found that the evidence was sufficient to establish that Appellant was the driver of the vehicle. *See Harden*, *supra* at 111.[5] Appellant's first issue lacks merit.

In his second issue, Appellant maintains that the trial court erred in denying his motion for a new trial where "the jury placed too great a weight on the testimony of X.C. that [he] was the driver of the vehicle." (Appellant's Brief, at 12). Appellant's claim does not merit relief.

Our standard of review of a challenge to the weight of the evidence is distinct from that applied by the trial court:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial

---

[5] Moreover, Appellant's argument that the jury should not have believed X.C. because he had a motive to lie goes to credibility and the weight to be afforded his testimony, not the evidence's sufficiency. *See Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (observing, "credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence."). Also, his claim that the evidence was insufficient because his injuries could have been caused by wearing a driver's side seatbelt in the backseat likewise lacks merit because "circumstances established by the Commonwealth need not preclude every possibility of innocence." *Harden*, *supra* at 111 (citation omitted).

court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

**Commonwealth v. Weathers**, 95 A.3d 908, 910 (Pa. Super. 2014), *appeal denied*, 106 A.3d 726 (Pa. 2015) (citation omitted).

We have already found that the evidence, which contrary to Appellant's assertion consisted of more than X.C.'s statement, (**see** Appellant's Brief, at 12), was sufficient to support the jury's conclusion that Appellant was the driver of the van. We reiterate that the jury was "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." **Id.** (citation omitted); **see also Harden**, **supra** at 111. Further, "we may not weigh the evidence and substitute our judgment for the fact-finder." **Harden**, **supra** at 111 (citation omitted). Therefore, we conclude that the trial court properly exercised its discretion when it denied Appellant's motion for a new trial on the basis of his weight of the evidence claim. **See Weathers**, **supra** at 910. Appellant's second claim does not merit relief.

In his third claim, Appellant argues that the trial court abused its discretion in denying his motion for a new trial where "[it] erred in allowing the Commonwealth to admit into evidence Exhibit #2, a still photograph from the Trooper's [MVR] . . . because the photograph was not disclosed to the Appellant until the morning of trial[,]" in violation of Pennsylvania Rule of Criminal Procedure 573. (Appellant's Brief, at 13). Appellant's claim does not merit relief.

Our standard of review of this issue is well-settled:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.
>
> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749-50 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citations and quotation marks omitted).

Further, Rule 573 mandates that the Commonwealth disclose any material evidence in its possession at the defendant's request. *See* Pa.R.Crim.P. 573(B). The Rule provides that the Commonwealth is under a continuing duty to "promptly notify the opposing party or the court" if "prior to or during trial, [it] discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule[.]" Pa.R.Crim.P. 573(D).

> If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E)[]. The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). **A defendant seeking relief from a discovery violation must demonstrate prejudice.** A violation of discovery does not automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

*Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003), *appeal denied*, 848 A.2d 927 (Pa. 2004) (case citations and quotation marks omitted) (emphasis added); *see also Commonwealth v. Counterman*, 719 A.2d 284, 298 (Pa. 1998), *cert. denied*, 528 U.S. 836 (1999) (observing trial court properly denied motion for new trial where late disclosure did not prejudice appellant's ability to present defense); *Commonwealth v. Chambers*, 599 A.2d 630, 638 (Pa. 1991), *cert. denied*, 505 U.S. 1238 (1992) (concluding trial court did not err in denying motion for mistrial for untimely disclosure where appellant could not demonstrate prejudice).

Here, the record reveals that Appellant objected to the admission of the photograph prior to the start of trial. (*See* N.T. Trial, at 5-6). Although defense counsel initially indicated that the photograph did not "necessarily hurt" his case, he ultimately indicated that Appellant would be prejudiced by the evidence's admission because it would allow the Commonwealth to argue that someone wearing a white shirt drove the subject vehicle. (*See id.* at

5). However, Appellant did not request a continuance to prepare a different trial strategy in light of this fact. (***See id.*** at 5-8).

During trial, the entire exchange about the photograph that occurred between the assistant district attorney and X.C. was the following:

> Q     I'm going to show you a photograph that's been marked as Exhibit Number 2. Is that the van you were driving in?
>
> A     Yes.

(N.T. Trial, at 24).

The assistant district attorney also asked Trooper Hartung about the photograph:

> Q     . . . We'll get through some photographs with you. I want to start with Exhibit Number 2, I'm going to show you that photograph. It's fair to say that would be a photograph of the vehicle taken from the video that the jury just had an opportunity to view, am I correct?
>
> A     Correct.
>
> Q     That was at the location on I-78 when you were sitting perpendicular to the traffic, correct?
>
> A     Correct.
>
> Q     Now, looking at the photograph, it's fair to say that you can't necessarily see an individual in the vehicle but you can at least see what they were wearing?
>
> A     Yeah.
>
> [Appellant's counsel]   I'm going to object, Your Honor. The jury can look at the photograph and make whatever determinations they want to make. I don't know how it's relevant to what the officer thinks he may see in the photograph.

- 11 -

[Assistant District Attorney]  That  was  my  only  question.    I wasn't going to go any further than that but that's fine.

(*Id.* at 40-41).

In Appellant's brief, his one paragraph argument fails to explain how these brief references to the subject photograph affected his trial strategy or how he was otherwise prejudiced by the late disclosure.  (*See* Appellant's Brief, at 14).  He merely generally states that he was prejudiced because "the late disclosure resulted in unfair surprise to [him], and allowed the Commonwealth to present additional evidence that [he] was driving the van . . . ."  (*Id.*).  Absent from his argument is actual proof of how this affected his defense.  (*See id.* at 13-14).

Therefore, because Appellant has utterly failed to establish that he was prejudiced by the Commonwealth's late disclosure of the photograph, we conclude that the trial court properly denied his motion for a mistrial.[6]  *See*

_____

[6] Based on our disposition, we do not reach the issue of whether the trial court properly found that the Commonwealth had a duty to disclose the photograph under Rule 573 in the first place.  (*See* Trial Ct. Op., at 13). However, we must note that the Commonwealth provided Appellant with a copy of the video taken from Trooper Hartung's MVR months before trial.  As observed by the Commonwealth:

[Appellant] had plenty of time to obtain still images from the video . . . .  Creating a screen shot of the driver's shirt for purposes of an exhibit and to create a record is not inappropriate.  In fact had the Commonwealth desired it simply could have hit stop on the video in order for the jury to see the exact same image. . . .

*(Footnote Continued Next Page)*

*Causey*, *supra* at 171; *see also Counterman*, *supra* at 298; *Chambers*, *supra* at 638. Appellant's third issue lacks merit.

In his fourth claim, Appellant alleges that the trial court should have granted his motion for a new trial where it gave an erroneous jury instruction that referred to "the financial costs and other consequences if [it] did not reach a unanimous verdict." (Appellant's Brief, at 14). This issue is waived.

Early in the deliberative process, the jury foreperson notified the trial court that the jury could not reach a verdict. (*See* N.T. Trial, at 84). In response, the court instructed them about the importance of the jury's role, and urged them to continue trying to reach a decision. (*See id.* at 84-87). At the conclusion of this supplemental charge, although the court expressly gave counsel the opportunity to comment, Appellant's counsel chose not to object. (*See id.* at 87). Therefore, this issue is waived. *See Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he

_(Footnote Continued)_ ―――――――――

(Commonwealth's Brief, at 14). We agree with the Commonwealth's observation. The photograph was not "additional evidence" for purposes of Rule 573, but merely was a piece of evidence extracted from a larger exhibit.

Additionally, based on the record before us, it is difficult to see how this photograph was material to the Commonwealth's case, thus triggering its obligation under Rule 573. *See* Pa.R.Crim.P. 573(B). However, the trial court's finding on Rule 573 does not alter our disposition because we conclude that it properly found that Appellant was not entitled to a new trial where he failed to prove prejudice.

failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue.") (citations omitted).

Additionally, we observe that Appellant's three-sentence argument on this issue does not comport with our appellate rules. (**See** Appellant's Brief, at 14-15); **see also** Pa.R.A.P. 2119(a), (b). It contains one citation to support Appellant's general statement that an erroneous jury instruction "may provide the basis of a new trial[] if it is shown that the instruction was fundamentally in error and that it may have been responsible for the verdict." (Appellant's Brief, at 14). However, the argument contains no pertinent citation or discussion in support of his claim that the trial court's supplemental instruction to the jury "improperly implied that the jury had to reach a unanimous verdict." (**Id.** at 14-15); **see also** Pa.R.A.P. 2119(a), (b). Therefore, this issue is waived on this basis as well. **See** Pa.R.A.P. 2101; **Commonwealth v. Genovese**, 675 A.2d 331, 334 (Pa. Super. 1996) (waiving issue and declining review where appellant failed to adequately develop argument).[7]

_____

[7] We also observe that a review of the trial court's instruction to the deadlocked jury reveals no abuse of the court's sound discretion. (**See** N.T. Trial, at 84-87); **see also Commonwealth v. Marion**, 981 A.2d 230, 235 (Pa. Super. 2009), *appeal denied*, 990 A.2d 729 (Pa. 2010); Pa.R.Crim.P. 647(C) ("After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties[.]").
*(Footnote Continued Next Page)*

- 14 -

In his final issue, Appellant argues that "the [s]entencing [c]ourt's decision to run all of the counts consecutively, and its decision to run this sentence consecutive to his state parole violation[,] was a manifest abuse of discretion contrary to the fundamental norms underlying the sentencing process." (Appellant's Brief, at 9). This issue is waived.

> The fundamental tool for appellate review is the official record of the events that occurred in the trial court. To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. . . . [U]nder the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent[.] . . . Simply put, if a document is not in the certified record, the Superior Court may not consider it.

> This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

***Commonwealth v. Preston***, 904 A.2d 1, 6-7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citations omitted).

*(Footnote Continued)* ————————

Importantly, the instruction comports with the minimum standards set forth by the American Bar Association and Pennsylvania Standard Criminal Jury Instructions. **See** ABA Standards, Trial By Jury, § 5.4; Pa. S.Crim.J.I. 2.09.

Here, the certified record does not contain the notes of testimony from the July 2, 2014 sentencing hearing. In fact, Appellant did not request that they be transcribed at the time he filed his notice of appeal, in violation of Pennsylvania Rule of Appellate Procedure 1911(a).[8] *See* Pa.R.A.P. 1911(a); *see also Preston*, *supra* at 6-7. Accordingly, because we are unable to conduct meaningful appellate review of Appellant's sentencing claim, we deem it waived. *See Houck*, *supra* at 457 (noting that "[i]f the defendant is appealing the denial of a suppression motion and fails to have the suppression hearing transcript made part of the appellate record, we can take such action as we deem appropriate, including dismissal of the issue.") (citation omitted); *Commonwealth v. Gillen*, 798 A.2d 225, 229 (Pa. Super. 2002) (finding issues waived where appellant failed to provide necessary hearing transcript).

Judgment of sentence affirmed.

---

[8] On July 14, 2014, the trial court directed the court reporter to transcribe the notes of testimony from sentencing and trial (no openings or closings) because they were necessary for deciding Appellant's post-trial motion. (*See* Post-Sentence Scheduling Order, 7/18/14, at 1). The record does not reflect that a sentencing transcript was prepared. However, we remind Appellant's counsel that "it was not the responsibility of the [t]rial [c]ourt to order the transcription of the [sentencing hearing,]" and that "Pa.R.A.P. 1911 makes it abundantly plain that it is the responsibility of the Appellant to order all transcripts necessary to the disposition of his appeal." *Commonwealth v. Steward*, 775 A.2d 819, 833 (Pa. Super. 2001) (citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/5/2015</u>